IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LADONNA MARIE FAIR,

Plaintiff,

v.

MERCEDES-BENZ OF BEAVERTON, (LMBB, LLC), LITHIA MOTORS, INC., and ALLY BANK,

Defendants.

Case No. 3:26-cv-00926-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff LaDonna Marie Fair ("Fair") filed this action against Defendants Mercedes-Benz of Beaverton (LMBB, LLC) ("Mercedes-Benz of Beaverton"), Lithia Motors, Inc. ("Lithia"), and Ally Bank (together, "Defendants"). Fair asserts claims against Defendants arising from the purchase and financing of a motor vehicle. (Compl. at 1, ECF No. 1.) Specifically, Fair alleges violations of the federal Truth in Lending Act, the Texas Deceptive Trade Practices Act, and the Oregon Unlawful Trade Practices Act. (*Id.* at 6-8.) The Court has jurisdiction over this case under 28 U.S.C. §§ 1331 and 1367.

///

Pending before the Court are Mercedes-Benz of Beaverton and Lithia's amended joint motion to compel arbitration and stay the proceedings (Defs.' Am. Mot. Compel ("Lithia Defs.' Am. Mot."), ECF No. 32) and Ally Bank's amended motion to compel arbitration and stay the proceedings (Def.'s Am. Mot. Compel ("Ally Am. Mot."), ECF No. 34). For the reasons discussed below, the Court grants both motions.

**BACKGROUND**

Fair resides in Red Oak, Texas.[1] (Compl. at 1.) Mercedes-Benz of Beaverton is located in Portland, Oregon, and Lithia is headquartered in Medford, Oregon. (*Id.* at 1.) Lithia is the parent company and controlling entity of Mercedes-Benz of Beaverton.[2] (Defs.' Reply Supp. Mot. Compel Arbitration ("Lithia Defs.' Reply") ¶ 14, ECF No. 14.) On March 13, 2023, Fair entered into a Retail Installment Sale Contract (the "RISC") to purchase a 2020 Mercedes-Benz CLA 250 from Mercedes-Benz of Beaverton. (Decl. LaDonna Marie Fair ("Fair Decl.") ¶ 2, ECF No. 13-1.) Fair signed the RISC as a paper document in Harris County, Texas, and returned the signed document via mail to Mercedes-Benz of Beaverton. (*Id.* ¶¶ 3-4.) Fair did not travel to Oregon while conducting the transaction. (*Id.* ¶ 5.)

Ally Financial Inc. financed the transaction, and Mercedes-Benz of Beaverton assigned the RISC to Ally Financial Inc. (Decl. Brian Keizer ("Keizer Decl.") ¶ 4, ECF No. 42-2; Lithia Defs.' Am. Mot. ¶ 1.) Ally Financial Inc. then assigned its right, title, and interest in and to the RISC to Ally Bank. (Keizer Decl. ¶ 5.)

///

[1] The following facts are drawn from the parties' pleadings, papers, declarations, and associated exhibits. *See Thompson v. Isagenix Int'l LLC*, 849 F. App'x 712, 712 (9th Cir. 2021) (noting that a "court may consider evidence outside the pleadings when ruling on a . . . motion to compel arbitration").

[2] The Court refers to Lithia and Mercedes-Benz of Beaverton as the "Lithia Defendants."

The RISC contains the following provision (the "Arbitration Provision") that allows either party to choose to have any dispute between the parties decided by arbitration:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

(Lithia Defs.' Am. Mot., Ex. 1 at 4.) The Arbitration Provision further states that the "arbitration hearing shall be conducted in the federal district in which [the buyer] reside[s] unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed." (*Id.*)

The Arbitration Provision provides that "[a]ny arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration." (*Id.*, Ex. 1 at 4.) A separate provision of the RISC states that "[f]ederal law and the law of the state of Oregon apply to this contract." (*Id.*)

Following the transaction, disputes arose as to how the loan was structured and financed, as well as to the vehicle's condition and title. (Lithia Defs.' Am. Mot. ¶ 9; *see generally* Compl.) Fair filed this action against Defendants in the District of Oregon on May 8, 2026. (Compl. at 1.) Fair had previously filed a separate action against Ally Financial Inc. in Texas. (*Id.*); *see Fair v. Ally Fin. Inc.*, No. 3:25-cv-03121-D (N.D. Tex. filed Nov. 14, 2025).

The Lithia Defendants filed an answer on July 2, 2026 (Defs.' Answer, ECF No. 10), and their original motion to compel arbitration on July 15, 2026. (Defs.' Mot. Compel, ECF No. 12.) Fair timely filed her opposition to the motion (Pl.'s Opp'n Mot. Compel Arbitration ("Pl.'s Opp'n Lithia Defs.' Mot."), ECF No. 13), and Defendants filed a reply. (Lithia Defs.' Reply.)

Upon discovering an error in Defendants' original motions, the Court ordered Defendants to file amended motions. (Order, ECF No. 30.) Defendants filed amended motions to compel arbitration (Lithia Defs.' Am. Mot.; Ally Am. Mot.) and the Court denied the original motions as moot (Order, ECF No. 33). Fair filed a supplemental response to the amended motions to compel arbitration, incorporating the arguments of her previous oppositions. (Pl.'s Suppl. Resp., ECF No. 41; *see also* Pl.'s Opp'n Lithia Defs.' Mot.; Pl.'s Opp'n Def.'s Mot. Compel ("Pl.'s Opp'n Ally Mot."), ECF No. 25.)

Fair originally named Ally Financial Inc. as a defendant in this action. (Compl. at 1.) The Court later granted Ally Financial Inc.'s unopposed motion to substitute Ally Bank as the appropriate defendant and dismiss Ally Financial Inc. from the suit without prejudice. (Order, ECF No. 44; *see* Def.'s Mot. Substitute Party ("Ally Mot. Substitute"), ECF No. 42.) Pursuant to that order, the Court deems the prior relevant filings of Ally Financial Inc. as filed by Ally Bank.

## LEGAL STANDARDS

The Federal Arbitration Act ("FAA") "requires courts to compel arbitration of claims covered by an enforceable arbitration agreement." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 509-10 (9th Cir. 2023) (citing 9 U.S.C. § 3). "Under the FAA, private agreements to arbitrate are 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 831 (9th Cir. 2022) (quoting 9 U.S.C. § 2); *see also Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1193 (9th Cir. 2024) (quoting 9 U.S.C. § 2).

"Generally, a court must determine two issues before deciding whether to compel arbitration: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Knapke*, 38 F.4th at 831 (quoting *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1201 (9th Cir. 2021)). "In determining whether the parties have agreed to

arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Oberstein*, 60 F.4th at 510 (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022)); *see also Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1058 (9th Cir. 2020) (explaining that "[s]tate law governs the validity, revocability, and enforceability of a contract" (citing *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc))). "Federal substantive law[, on the other hand,] governs the scope of an arbitration agreement." *Shikov*, 974 F.3d at 1058-59 (citing *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013)).

"The presence of a delegation clause further limits the issues that a court may decide." *Fli-Lo Falcon*, 97 F.4th at 1194 (quoting *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022)). Thus, "[w]hen the parties have 'clearly and unmistakably' delegated questions regarding arbitrability to the arbitrator, the court need not conduct further inquiries beyond the existence of the arbitration agreement." *Id.* (first citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010); and then citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)).

Motions to compel arbitration are subject to the Federal Rule of Civil Procedure 56 summary judgment standard. *See Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). To the extent that facts are disputed, the Court treats those disputes as it would on a motion for summary judgment, "construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp. 3d 1243, 1249 (C.D. Cal. 2016) (citation omitted).

///

///

**DISCUSSION**

In support of their motions to compel, Defendants assert that the Arbitration Provision is enforceable and covers the claims set forth in Fair's complaint. (Lithia Defs.' Am. Mot. at 4-7; Ally Am. Mot. at 5-8.) They further argue that the provision requires that the arbitration is conducted in the Southern District of Texas and move for the Court to compel arbitration in that district. (Lithia Defs.' Am. Mot. at 7-8; Ally Am. Mot. at 12-14.)

In opposition, Fair argues that (1) Lithia does not have the right to compel arbitration as a non-signatory to the RISC; (2) the Lithia Defendants waived their right to enforce the Arbitration Provision through litigation conduct; and (3) Defendants are mistaken about the arbitration's proper venue.[3] (Pl.'s Opp'n Lithia Defs.' Mot. at 1-2; Pl.'s Opp'n Ally Mot. at 4-6.) Fair does not contest the validity of the Arbitration Provision, nor that it applies to her claims. (Pl.'s Opp'n Lithia Defs.' Mot.; Pl.'s Opp'n Ally Mot.)

**I. NONSIGNATORY ENFORCEMENT**

The Lithia Defendants assert that a "valid arbitration agreement exists between [Fair] and Mercedes-Benz of Beaverton" (Lithia Defs.' Am. Mot. ¶ 18), and that therefore this Court "should compel [Fair's] claims to arbitration and stay the pending litigation." (*Id.* ¶ 28.) The Lithia Defendants' motion does not address the relationship between Lithia and Mercedes-Benz of Beaverton or provide an independent legal basis for Lithia's ability to compel arbitration.

In opposition, Fair correctly notes that Lithia "does not appear anywhere on the RISC." (Pl.'s Opp'n Lithia Defs.' Mot. at 4.) Although Fair acknowledges that non-signatories "may

---

[3] Fair's original and supplemental responses also include arguments related to the assignment of the RISC from Ally Financial Inc. to Ally Bank, and Ally Financial Inc.'s failure to conduct the required conferral in advance of its original motion. (Pl.'s Opp'n Ally Mot. at 3-4; Pl.'s Suppl. Resp. at 3-6.) Those arguments have largely been mooted by the amended motion to compel (Ally Am. Mot.) and the unopposed substitution of Ally Bank as the appropriate defendant.

sometimes enforce or be bound by an arbitration agreement" (*id.*), she argues that the Lithia Defendants "neither invoke nor attempt to establish any such theory" in their motion. (*Id.* at 5.) In reply, the Lithia Defendants offer various theories as to why Lithia is entitled to enforce the Arbitration Provision. (Lithia Defs.' Reply at 3-7.) For the reasons discussed below, the Court finds that Lithia may enforce the Arbitration Provision as the parent company of Mercedes-Benz of Beaverton and Ally Bank may enforce the Arbitration Provision as the assignee of the RISC.

The first step for the Court is to determine whether it may address the non-signatories' ability to compel arbitration or whether the issue constitutes a question of "the interpretation and scope" of the Arbitration Provision that must be decided by an arbitrator. (*See* Lithia Defs.' Am. Mot., Ex. 1 at 4.) Under similar circumstances, the Ninth Circuit has declined to delegate that question to the arbitrator. *See Kramer*, 705 F.3d at 1127 (holding that in the "absence of clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories, the district court had the authority to decide whether the . . . dispute is arbitrable"). Accordingly, the Court finds that it may address the question. *See Big Wuf Enters., LLC v. Go Farm Hemp LLC*, No. 6:20-cv-01634-MC, 2021 WL 12319108, at *2 (D. Or. July 12, 2021) ("[I]n Oregon, the Court determines whether unnamed third-party defendants can invoke an arbitration clause." (citing *Livingston Metro. Pediatrics, LLC*, 227 P.3d 796, 804-05 (Or. Ct. App. 2010))).

"Generally, parties who have not assented to an arbitration agreement cannot be compelled to arbitrate under its terms." *Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088, 1094 (9th Cir. 2020) (citing *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002)). However, "[t]he United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer*, 705 F.3d at 1128 (citing *Arthur Andersen LLP v.*

*Carlisle*, 556 U.S. 624, 632 (2009)); *see also Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) (same); *cf. Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 870-71 (9th Cir. 2021) (applying state law to an examination of whether a nonsignatory may invoke an arbitration provision when the signatory "attempts to avoid arbitration by suing nonsignatory defendants for claims that are based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants") (citation omitted).

Looking to Oregon law, Oregon courts have addressed whether a non-signatory co-defendant may compel arbitration. In *Livingston*, the Oregon Court of Appeals allowed a nonsignatory co-defendant to enforce an arbitration provision where the plaintiff's claims against the nonsignatory "depend[ed] on the same allegations made against [the signatory co-defendant] and have as their source the identical circumstances of plaintiff's claims against [the signatory co-defendant.]" 227 P.3d at 805 (noting the "presumption in favor of arbitrability"); *see also Lewis v. Varde*, 521 P.3d 522, 525 (Or. Ct. App. 2022) (holding that the trial court erred in denying a non-signatory's petition to compel arbitration where the plaintiff's claims against both the signatory and non-signatory defendants "ha[d] as their source both defendants' failure to perform under [a] contract" and "the broad language of the arbitration agreement [wa]s plausibly susceptible to the construction that it also applies to claims against [the non-signatory], in addition to claims against [signatory], arising from the work that [the non-signatory] performed under the construction contract").

Similarly here, Fair's claims against Lithia depend on her allegations against Mercedes-Benz of Beaverton. If fact, Fair asserts no claims against Lithia directly, but instead asserts only that Lithia, as the parent company of Mercedes-Benz of Beaverton, "exercised operational oversight and control" over Mercedes-Benz of Beaverton and is "therefore liable to the extent its

conduct, policies, or oversight contributed to the violations alleged." (Compl. at 1-2.) Further, the RISC includes broad language reflecting the parties' intent that the Arbitration Provision would apply to any dispute between Fair and Mercedes-Benz of Beaverton *or* its "agents, successors or assigns, which arises out of or relates to [Fair's] credit application, purchase or condition of th[e] vehicle, th[e] contract or any resulting transaction or relationship" and expressly "including any such relationship with third parties who do not sign th[e RISC." (Lithia Defs.' Am. Mot. Ex. 1 at 4.)

In light of Fair's reliance on the same allegations against both Mercedes-Benz of Beaverton and Lithia, the Arbitration Provision's broad scope anticipating the inclusion of non-signatories, and the presumption of arbitrability, the Court finds that Lithia may rely on the Arbitration Provision to compel arbitration of Fair's claims. *See Livingston*, 227 P.3d at 805 n.7 (noting that under certain circumstances, "nonsignatories to an arbitration agreement may benefit from the agreement where the legal basis and factual context for claims against nonsignatories are the same as claims against the signatories"); *see also Marshall v. Healthy Living Network Res., LLC*, No. 6:21-cv-01304-MK, 2022 WL 2015325, at *5 (D. Or. May 11, 2022) (applying Oregon law and granting a non-signatory's motion to compel arbitration where the arbitration clause "'plausibly encompasse[d] not only claims between [Plaintiff and the signatory], but claims against' [the non-signatories] as well" (quoting *Livingston*, 227 P.3d at 805)), *findings and recommendation adopted*, 2022 WL 1988000 (D. Or. June 6, 2022); *Big Wuf Enters.*, 2021 WL 12319108, at *2 (applying Oregon law and granting non-signatory's motion to compel arbitration where the relevant agreement "impl[ied] that the parties intended to allow unnamed

parties, such as Defendants, access to the arbitration provision").[4] The Court further finds that Ally Bank may enforce the Arbitration Provision as the assignee of the RISC. (*See* Lithia Defs.' Am. Mot. Ex. 1 at 4, providing that the Arbitration Provision applies to Mercedes-Benz of Beaverton and its "agents, successors or assigns").

**II. WAIVER**

Fair alleges that the Lithia Defendants failed to invoke arbitration in response to her January 7, 2026, and March 27, 2026, demand letters, and otherwise delayed the initiation of arbitration. (Compl. at 2, asserting that such conduct is "inconsistent with any intent to arbitrate" and that the Lithia Defendants have thus waived their right to arbitrate under the waiver principles articulated in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022).) Fair repeats these arguments in opposition to the Lithia Defendants' motion to compel. (*See* Pl.'s Opp'n Lithia Defs.' Mot. at 8.) The Lithia Defendants respond that they "have not substantively invoked the jurisdiction of the Court" and that they specifically reserved the right to compel arbitration in their answer to the complaint. (Lithia Defs.' Reply ¶¶ 40-41; *see also* Lithia Defs.' Answer.)

The Court finds that Fair has failed to establish waiver here. Although *Morgan* abrogated Ninth Circuit precedent that required a party claiming waiver to demonstrate prejudice, the "party opposing arbitration still bears the burden of showing waiver[.]" *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014-15 (9th Cir. 2023). Because no "concrete test" exists for evaluating waiver, courts instead ask whether a party's actions "indicate a conscious decision … to seek judicial judgment on the merits of the arbitrable claims[.]" *Id.* at 1015 (quoting *Hill v. Xerox Bus. Servs.*, 59 F.4th 457, 468-69 (9th Cir. 2023)).

---

[4] The case on which Fair relies in opposition involved a car dealership and vehicle manufacturer, which materially differs than the parent-subsidiary relationship at issue here. (*See* Pl.'s Opp'n Lithia Defs.' Mot. at 5-6, citing *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 944-45 (9th Cir. 2022)).

The Lithia Defendants have not asked the Court to adjudge the merits of Fair's claims. Further, merely declining to invoke arbitration in response to pre-litigation demand letters does not align with conduct that the Ninth Circuit has found to constitute waiver. *See, e.g.*, *Hill*, 59 F.4th at 473 (finding waiver where a party's six years of failed litigation on the merits showed it "chose to retreat and to claim the benefit of arbitration . . . only once its judicial strategy failed"); *Martin v. Yasuda*, 829 F.3d 1118, 1126 (9th Cir. 2016) (finding waiver where the defendants filed a motion to dismiss, engaged in discovery, and failed to invoke their right to arbitration until "almost a year into the litigation"); *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) (finding waiver where a party engaged in two years of pleadings, motions, and a pre-trial conference order before seeking arbitration).

Here, the Lithia Defendants' only filing in this case prior to their motion to compel arbitration was an answer to the complaint in which they reserved their right to compel arbitration. (Lithia Defs.' Answer at 2.) Fair has failed to present any evidence or authority to establish that the Lithia Defendants waived their right to invoke the Arbitration Provision. As such, the Court finds the Lithia Defendants have not waived their right to compel arbitration.

**III. VENUE**

Defendants request that the Court compel the parties to arbitrate in the Southern District of Texas. (Lithia Defs.' Am. Mot. at 7-8; Ally Am. Mot. at 12-15.) Fair argues in response that if the Court were to compel arbitration, it should proceed in the District of Oregon. (Pl.'s Opp'n Lithia Defs.' Mot. at 9; Pl.'s Opp'n Ally Mot. at 6.) In its amended motion to compel, Ally requested for the first time that if the Court finds it cannot compel arbitration in the Southern District of Texas, it should instead direct arbitration within the District of Oregon. (Ally Am. Mot. ¶ 46.)

///

The Arbitration Provision provides that the arbitrator must resolve questions as to the provision's "interpretation and scope." (Lithia Defs.' Am. Mot. Ex. 1 at 4.) In light of this broad delegation clause, the Court reserves the issue of venue for the arbitrator.[5] *See Jameson v. Ringside Dev. Co.*, No. 3:24-cv-08654-CRB, 2025 WL 562889, at *2 (N.D. Cal. Feb. 20, 2025) ("[T]here is sufficient evidence to conclude that there was a meeting of the minds with regards to the arbitration agreement, meaning that any issues of venue or choice-of-law are to be resolved by the arbitrator, not the Court."); *SpinX Games, Ltd.*, 2023 WL 3763803, at *3 (holding that the parties' dispute about the location of arbitration "should be resolved by the arbitrator" in light of the arbitration agreement's "broad delegation clause").

**CONCLUSION**

For the reasons stated, the Court GRANTS Mercedes-Benz of Beaverton and Lithia Motors' amended motion to compel arbitration (ECF No. 32), GRANTS Ally Bank's amended motion to compel arbitration (ECF No. 34), compels arbitration of Fair's claims against Defendants, and stays this case pending resolution of the arbitration proceedings.

**IT IS SO ORDERED.**

DATED this 13th day of November, 2026.

HON. STACIE F. BECKERMAN
United States Magistrate Judge

[5] The Court encourages the parties to confer regarding the option of conducting the arbitration remotely. *See Nurse Next Door Home Healthcare Servs. (USA), Inc. v. Sipp*, No. C24-884 MJP, 2024 WL 3859704, at *2 (W.D. Wash. Aug. 19, 2024) (noting that "the arbitrator has discretion to determine whether to hold the arbitration via remote means") (citation omitted); *see also SpinX Games, Ltd. v. Viel*, No. 23-cv-01337-WHO, 2023 WL 3763803, at *3 (N.D. Cal. May 31, 2023) ("[I]t is unclear to me that this argument over venue constitutes a real dispute. The parties are willing to proceed by videoconference but they have not checked with AAA to confirm that it will allow such a proceeding.").